# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 2, 2010 Session

## STATE OF TENNESSEE v. LISA WIGGINS

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8526      Joseph H. Walker, III, Judge**

---

**No. W2009-00869-CCA-R3-CD  - Filed May 19, 2010**

---

The defendant, Lisa Wiggins, pled guilty to facilitation of burglary, a Class E felony, and facilitation of theft, a Class A misdemeanor.  The trial court sentenced her to an effective sentence of one year of probation and ordered her to pay $4,874 in restitution.  On appeal, the defendant argues that the state presented insufficient proof at the restitution hearing of the amount of restitution, and the trial court did not consider the defendant's financial resources and ability to pay.  Following our review, we reverse the trial court's order and remand the matter for consideration of the amount of restitution, the defendant's financial resources, and her ability to pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Tracey A. Brewer-Walker, Ripley, Tennessee, for the appellant, Lisa Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

In February 2009, a Lauderdale County grand jury indicted the defendant, Lisa Wiggins, for facilitation of burglary, a Class E felony, and felony facilitation of theft, also a Class E felony.  The grand jury also indicted the defendant's husband, Christopher

Wiggins, on ten counts of theft, burglary, and vandalism. On April 17, 2009, the defendant pled guilty, pursuant to a negotiated plea agreement, to facilitation of burglary and misdemeanor facilitation of theft. At the plea acceptance hearing, the prosecutor stated the following factual basis for the plea:

> Had this matter gone to trial the [s]tate would have presented proof with regard to each individual mini-storage building that was broke[n] into[.] [V]arious items were taken involving numerous victims. The mini-storage building itself was owned by Billy Harmon, and there was damage to the locks and some of the doors with regard to those storage buildings.
>
> [The defendant] gave a statement in which she said ([a]s read):
>
>> I, [the defendant], and Christopher Wiggins were riding on Drake Street Friday night. [Mr. Wiggins] pulled up to a mini-storage, got out and said, "I will be back." In about five minutes or less I heard the police tell [Mr. Wiggins] to get on the ground.
>>
>> But instead [Mr. Wiggins] came back to the car and told [the defendant] to get in the driver's seat and drive. [Mr. Wiggins] has gone to something storage [sic] by the nursing home and across the street from Walker's Motor Court. [Mr. Wiggins] has sold items to Needle Head, Ben, Keesha, Robert Atkins, Coon, J.D., and Dirty [as far as the defendant] can recall. To her knowledge [Mr. Wiggins had] three or four TVs, a VCR, a fish tank, George Forman [sic] grill, two big speakers, and that is all that she [could] think of at the time.
>>
>> [The defendant] rode with [Mr.] Wiggins a couple of times[,] but she did not know where they were going until [Mr. Wiggins] drove up, that she took a wet vac to City Pawnshop for [him] and that she has Thank You boxes in the closet in the living room.
>
> . . .
>
> [N]umerous items were found at the Wiggins residence that were linked back to numerous mini-storages that were involved in these particular burglaries and thefts.

While none of the victims were present at the hearing to testify as to the amount of their losses, the state advised the court as to the amount reported by each victim listed in the indictment and the amount recorded on Mr. Wiggins' judgment sheets.[1]  Defense counsel objected to the assessment of restitution because the witnesses were not available for the defense to cross-examine.  The trial court sentenced the defendant to a suspended sentence of one year in the Tennessee Department of Correction for facilitation of burglary, to be served concurrently with eleven months, twenty-nine days, suspended, in the workhouse for misdemeanor facilitation of theft.  The court ordered the defendant to pay restitution, jointly and severally with her husband, in the amount of $4,874.  The defendant filed this timely appeal.

**Analysis**

The defendant argues that the trial court erred in the amount of restitution it assessed against the defendant because the victims were not present to testify to the amount of their losses, and the trial court did not consider the defendant's financial resources or ability to pay.  The state concurs with the defendant.

When a defendant challenges the validity and amount of restitution, this court conducts a *de novo* review of both the amount of restitution ordered and the method by which it was determined.  *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997) (citing Tenn. Code Ann. § 40-35-401(d) (1990)).  The trial court is entitled to a presumption of correctness on appeal. *See id.*

Tennessee Code Annotated section 40-35-304 sets out the procedures the trial court must follow in ordering restitution.  The trial court "may direct a defendant to make restitution to the victim of the offense as a condition of probation."  Tenn. Code Ann. § 40-35-304(a).  "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss."  *Id.* § 40-35-304(b).  The amount of restitution that the defendant may be directed to pay is limited to "the victim's pecuniary loss."  *Id.*  The phrase "pecuniary loss" includes:

> (1) All special damages, but not general damages, as substantiated by evidence
> in the record or as agreed to by the defendant; and

---

[1]  The record indicates that Mr. Wiggins pled guilty; however, his judgment sheet(s) are not included in the record.

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

*Id.* § 40-35-304(e). There is no set formula for awarding restitution. *Johnson*, 968 S.W.2d at 886. The sum of restitution ordered must be reasonable and does not have to equal the precise pecuniary loss. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). However, the court must consider not only the victim's pecuniary loss but also the financial resources and future ability of the defendant to pay. Tenn. Code Ann. § 40-35-304(d); *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *Johnson*, 968 S.W.2d at 885.

In ordering restitution, the trial court shall specify the amount and time of payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. *Id.* at 304(g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. *Id.* at 304(f). Further, any unpaid portion of the restitution may be converted to a civil judgment. *Id.* at 304(h)(1); *Bottoms*, 87 S.W.3d at 108.

In this case, the trial court did not address, at least on the record, the financial resources of the defendant or her future ability to pay the restitution amount. The court did not order the presentence service officer to document the nature and amount of the victims' pecuniary losses. In addition, the court did not clearly specify the time or amount of payments. Accordingly, we remand the case to the trial court to consider evidence of the victims' pecuniary losses and the defendant's financial resources and ability to pay and to set an amount of restitution that the defendant can reasonably pay.

### Conclusion

Based on the foregoing, we reverse the trial court's order and remand the matter to the Lauderdale County Circuit Court for a determination of the appropriate amount of restitution, the defendant's financial resources and her ability to pay consistent with this opinion.

_____

J.C. McLIN, JUDGE