IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2015


**STATE OF TENNESSEE v. EMILY BRITTANY DAVIS**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1334      Mark J. Fishburn, Judge**

_____


**No. M2015-00262-CCA-R3-CD – Filed September 22, 2015**
_____


The Defendant, Emily Brittany Davis, pleaded guilty to one count of vandalism under $500 and was sentenced to serve eleven months, twenty-nine days on supervised probation and pay restitution to the victim.  After a hearing, where the victim testified about the cost of the Defendant's vandalism, the criminal court ordered the Defendant to pay $800 in restitution, and the Defendant appeals this order.  Following a careful review of the record and applicable law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Emily Brittany Davis.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and Brian Ewald and Sarah Davis, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION
## Factual and Procedural History

A Davidson County Grand Jury indicted the Defendant with one count of vandalism under $500 and one count of simple assault for vandalizing her ex-boyfriend's car and threatening his fiancée. The Defendant pleaded guilty to the charge of vandalism, and the State dismissed the assault charge under a plea agreement. Under the plea agreement, the Defendant was sentenced to eleven months, twenty-nine days on supervised probation. The Defendant agreed to attend eight hours of anger management counseling and pay restitution to the victim, the amount of which would be set at a later hearing.

At the restitution hearing, the State called the victim, Orian Thomas, to testify about the damage the Defendant caused to his property. Mr. Thomas testified that he and the Defendant dated for approximately a year. On December 15, 2013, approximately three months after Mr. Thomas and the Defendant ended their relationship, the Defendant went over to Mr. Thomas's house and asked for the keys to Mr. Thomas's car. Mr. Thomas informed the trial court that he owned the car in question and the Defendant had only "helped [Mr. Thomas] fix a couple of parts." When Mr. Thomas refused to give the Defendant the car keys, the Defendant destroyed the car's temporary license tag, broke the windshield wipers off the car, and poured soda into the car's gas tank.

Due to the damage caused by the Defendant, Mr. Thomas had to replace the temporary tag, gas tank, and fuel line on the car, and clean the injectors. Mr. Thomas stated that he had not yet repaired the broken windshield wiper arm and, consequently, that part of the car still did not function correctly. Mr. Thomas estimated that the Defendant caused approximately $2,100 in damage and stated that the Defendant had agreed to pay the cost of the damage—both verbally and in a text message. According to Mr. Thomas, in a separate written agreement,[1] the Defendant agreed to pay $1,800 of the damage to Mr. Thomas's car and both Mr. Thomas and the Defendant had a copy of this agreement. Mr. Thomas stated that the Defendant had given him approximately $1,000 but the Defendant still owed him $800.

On cross-examination, Mr. Thomas stated that the vehicle in question was a "2001 Monte Carlo" which had been driven approximately 200,000 miles. Mr. Thomas had obtained the vehicle by trading a truck that he owned for the car. Mr. Thomas stated that the former owner of the car had valued it at $4,500 when Mr. Thomas obtained the car. At one time, Mr. Thomas had receipts detailing the cost of the car repairs as well as a

---

[1] It appears that the Defendant agreed via text message to pay for the damage to Mr. Thomas's car and that the parties also executed a written agreement separate from the text-message conversation.

copy of the written agreement between the Defendant and himself, but he had lost both items. The mechanic who had performed the repairs on Mr. Thomas' car was currently incarcerated and, therefore, was not available to testify regarding the value of the repairs. Mr. Thomas stated that both he and his fiancée witnessed the Defendant's vandalism of his vehicle.

The State asked the trial court to "take Mr. Thomas at his word" and order the Defendant to pay $800 in restitution. The Defendant's counsel argued that Mr. Thomas was not credible because he had "incentive to embellish in order to get some money" and asked the court to order the Defendant to pay $300 to $400 in restitution. The trial court stated that it found Mr. Thomas credible and ordered the Defendant to pay $800 in restitution to Mr. Thomas.

## Analysis

On appeal, the Defendant argues that the trial court erred by (1) setting restitution for $800 when the victim "provided absolutely no corroborating documents, photographs, or written communications establishing an actual restitution figure"; (2) "neglect[ing] to take into account [the Defendant's] financial status and/or future ability to pay restitution . . ."; and (3) "ordering restitution in excess of the amount to which [the Defendant] pled guilty."

The Tennessee Supreme Court has not yet addressed what impact, if any, State v. Bise, 380 S.W.3d 683 (Tenn. 2012), has on our review of restitution orders, but we have previously applied an abuse of discretion standard with a presumption of reasonableness. See State v. David Allan Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). On appeal, the appellant bears the burden of demonstrating that the sentence is improper. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

"The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997). There is no set formula for determining restitution. State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Instead, the trial court "must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay." State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).

Tennessee Code Annotated section 40-35-304 provides the procedure for imposing restitution as a condition of probation and requires that, "[i]n determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2014). The trial court has the duty to determine the defendant's ability to pay and may not delegate that duty to another. State v. Donna Harvey, No. E2009-01945-CCA-R3-CD, 2010 WL 4527013, at *5 (Tenn. Crim. App. Nov. 9, 2010). When restitution is ordered as a term of a sentence that is suspended to probation, the defendant "shall be responsible for the payment of the restitution until the expiration of the sentence imposed by the court, and any payment or performance schedule established by the court shall not extend beyond the expiration date[.]" Tenn. Code Ann. § 40-35-304(g)(2) (2014).

*Lack of Documentation of Damages*

The Defendant alleges that the trial court abused its discretion by finding the victim, Mr. Thomas, credible regarding the amount of damage to his car when Mr. Thomas did not provide any documentation of the damage.

"A victim seeking restitution must present sufficient proof so that a trial court can determine with some reliability the amount of the loss." Bottoms, 87 S.W.3d at 108-09. "While a victim's testimony alone may be sufficient to establish special damages for purposes of restitution, general statements regarding the amount of loss without explanation as to how the value was determined are insufficient." David Allan Bohanon, 2013 WL 5777254, at *7 (citing State v. David Robert Blevins, No. E2006-00830-CCA-R3-CD, 2007 WL 1153122, at *8 (Tenn. Crim. App. Apr. 19, 2007); State v. Wendell Gary Gibson, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *3-4 (Tenn. Crim. App. June 24, 2002)). Additionally, "documentation supporting the victim's testimony is helpful." Wendell Gary Gibson, 2002 WL 1358711, at *2.

At the restitution hearing, Mr. Thomas testified how he calculated the value of the damage from the Defendant's vandalism, stating that the $2,100 amount included the repairs performed by the mechanic, as well as the cost of replacing the temporary license tag that the Defendant destroyed. Further, Mr. Thomas explained that he and the Defendant had signed a written agreement stating that the Defendant would pay Mr. Thomas $1,800 to cover the damage from the vandalism and that the Defendant had already paid him $1,000. Finally, the trial court explicitly stated that it found Mr. Thomas' testimony credible. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the Defendant to pay $800 in restitution despite the lack of documentation of the damage to Mr. Thomas' car.

*Lack of Findings on the Defendant's Ability to Pay*

The Defendant argues that the trial court abused its discretion in ordering the Defendant to pay restitution when the trial court failed to make findings regarding the Defendant's financial situation and ability to pay restitution.

The State points to <u>State v. Steven Murray</u>, where this court held:
If no proof is presented at the sentencing hearing pertaining to a defendant's financial resources and/or ability to pay at the time of the sentencing hearing, then no facts exist to support a trial court's consideration of this factor. Even though a defendant may be declared indigent and have appointed counsel, as in this case, without a submission of proof concerning the defendant's financial status at the sentencing hearing, the court's decision would have to be based upon mere speculation.

<u>State v. Steven Murray</u>, No. E2000-02878-CCA-R3-CD, 2002 WL 1400055, at *2 (Tenn. Crim. App. June 28, 2002). The <u>Murray</u> Court further noted that if a defendant fails to provide proof of an inability to pay restitution and is ordered to pay restitution, the defendant may "petition the sentencing court at any time 'to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion thereof.'" <u>Id.</u> (quoting Tenn. Code Ann. § 40-35-304(f) (1997 & Supp. 2001)).

In this case, the Defendant did not present any evidence or testimony about her financial condition or ability to pay at the restitution hearing. Therefore, the trial court considered the evidence that **was** available, such as Mr. Thomas's testimony regarding the written agreement between himself and the Defendant. The trial court explicitly stated that it found Mr. Thomas credible. Mr. Thomas testified that the Defendant had agreed to pay Mr. Thomas $1,800 and already had paid $1,000 toward that agreement. The trial court could reasonably conclude from that testimony that the Defendant had the financial ability to pay the outstanding balance of the agreement. Further, the Defendant did not present any evidence that she was unable to honor the agreement, so any conclusion by the trial court that the Defendant could not pay the outstanding balance would have been "mere speculation." <u>See</u> <u>Steven Murray</u>, 2002 WL 1400055, at *2. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the Defendant to pay $800 in restitution.

*Trial Court's Restitution Order in Excess of $500*

Lastly, the Defendant argues that the trial court abused its discretion by ordering the Defendant to pay restitution of $800 when the Defendant was indicted for and

pleaded guilty to vandalism under $500. Initially, we note that the Defendant has failed to support her claim with case law or other relevant authority in her brief. In its response, the State points to State v. Lavey Hayes, a case in which the defendant also was convicted of misdemeanor vandalism but was ordered to pay restitution in an amount over $500. State v. Lavey Hayes, No. 01C01-9601-CC-00036, 1997 WL 126815, at *1 (Tenn. Crim. App. March 20, 1997). Under a de novo review, this court held that the trial court's restitution order, totaling over $500, was proper but reversed and remanded on other grounds. Id. at *1, *8.

The restitution statute does not facially prohibit a trial judge from ordering restitution over $500 when the defendant has pleaded to or been found guilty of a misdemeanor. See Tenn. Code Ann. § 40-35-304. Regarding the amount of restitution, the trial judge only needs to ensure that the amount is reasonable considering "the appellant's means and future ability to pay." See Johnson, 968 S.W.2d at 886.

Upon consideration of the record as a whole, we conclude that the restitution amount set by the trial court was reasonable. The Defendant has failed to establish that the trial court abused its discretion and is not entitled to relief.

## Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the criminal court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE